Revised February 12, 1999

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 96-40687**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**EDGAR CASTRO,**

**Defendant-Appellant.**

*****************************************

_____

**No. 96-40694**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**SUSANA GOMEZ,**

**Defendant-Appellant.**

_____

Appeals from the United States District Court

January 28, 1999

Before KING,[*] Chief Judge, POLITZ,[*] JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, PARKER, and DENNIS, Circuit Judges.

PER CURIAM:

On November 9, 1995, an officer of the Polk County Sheriff's Department stopped a Chevrolet Suburban traveling north on Highway 59, in Texas, for speeding and seat belt violations. He subsequently arrested two of the three occupants for seat belt violations, and impounded the Suburban. At the sheriff's department a search of the Suburban revealed over 900 pounds of cocaine hidden in the back of the vehicle. Edgar Castro, the driver, and Susana Gomez, the back seat passenger, were then charged with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).[2] When the district court denied their motions to suppress evidence found during the search, Castro and Gomez pleaded

---

[*] At the time of submission and oral argument Judge Politz was Chief Judge. Judge King became Chief Judge on January 16, 1999.

[2] Muriel Cristina Vicencio, the front seat passenger, was charged for the same crimes. She is not a party to this appeal, however.

guilty to the charges and appealed.[3]  In that appeal we were asked
to decide whether the district court erred in not suppressing the
evidence.  A panel of this Court answered that question in the
affirmative, holding that the officer violated the Fourth Amendment
rights of Castro and Gomez by impounding the Suburban and searching
the vehicle.  *United States v. Castro*, 129 F.3d 752 (5th Cir.
1997).  We granted rehearing *en banc*, *United States v. Castro*, 143
F.3d 920 (5th Cir. 1998), and now hold that Castro and Gomez did
not suffer a violation of their Fourth Amendment rights.

## I.

On the afternoon of November 9, 1995, several officers of a
joint state and federal task force were conducting surveillance of
Javier Vallejo, a suspected narcotics trafficker, at a mall in
Houston, Texas.  In the course of their surveillance the officers
noticed that Vallejo was accompanied by Gomez and an unidentified
Hispanic male.  Shortly after, the agents observed Gomez and the
unidentified male leaving the mall in a grey van.  Gomez was
subsequently dropped off at a K-Mart, where she made a telephone
call and bought some insignificant items, while her companion
detoured to a known stash house.  The unidentified male eventually
returned to K-Mart -- after engaging in several evasive maneuvers

---

[3]    Castro and Gomez reserved their right to appeal the district
court's denial of their suppression motions.

aimed at losing any possible surveillance -- and retrieved Gomez. The agents then followed the pair to a local motel, where Gomez was joined by Castro and Muriel Cristina Vicencio.

From the motel Castro drove a blue Chevrolet Suburban to the mall, while Gomez and Vicencio followed in two separate vehicles. After going inside the mall for roughly fifteen minutes, the trio left the mall in the Suburban and began to travel north on Highway 59. Castro was driving, Vicencio occupied the front seat, and Gomez occupied the rear seat. Several members of the task force followed the Suburban for approximately 115 miles through Harris, Montgomery and San Jacinto Counties, and into Polk County. After the Texas Department of Public Safety informed the officers that it did not have an available unit to stop the vehicle, officers of the task force contacted the Polk County Sheriff's Department for assistance.

In a brief conversation, Lieutenant Mike Nettles of the Polk County Sheriff's Department was given a description of the Suburban and informed that it was "involved in a narcotics investigation." He was also instructed that he would have to "develop his own probable cause" for stopping the vehicle. Officer Nettles, who had positioned his patrol car in the median of Highway 59, watched the Suburban as it passed and noticed that Castro, the driver, was not wearing his seat belt, and that the Suburban seemed to be traveling at an excessive rate of speed. Officer Nettles then followed the Suburban for several miles and with his speedometer paced the

4

Suburban at 67 m.p.h. in a 55 m.p.h. zone. While following the vehicle Officer Nettles also observed that Vicencio, the front seat passenger, was not wearing her seat belt, and that the vehicle appeared to have a heavy rear load which was causing it to sway sightly.

Officer Nettles then stopped the Suburban for speeding and seat belt violations. On approaching the vehicle Officer Nettles again observed that Castro and Vicencio were not wearing their seat belts. In the ensuing conversation, Castro produced a valid Maryland driver's license and explained that all three of the occupants were from out of state. Officer Nettles ran a check on Castro's license, which revealed no outstanding warrants. Nonetheless, after receiving several conflicting statements from the occupants, and based on their nervous demeanor, Nettles decided to arrest Castro and Vicencio for the seat belt violations. Officer Nettles also requested Castro's consent to search the Suburban, which was denied. Castro and Vicencio were then taken into custody; the Suburban was impounded and brought to the sheriff's department.[4]

There, Castro again refused to consent to a search of the Suburban. A trained narcotics detection dog was subsequently

_____

[4] The sheriff's department was a building and facility located about six miles away from the place on Highway 59 where the Suburban was initially stopped. Gomez, the back seat passenger, was not taken into custody. She was taken to the sheriff's department, however, because she was not an authorized driver on the Suburban's rental agreement.

5

brought to the sheriff's department and walked around the Suburban. After the dog alerted to the rear of the Suburban, the vehicle was entered and searched, uncovering almost 900 pounds of powder cocaine, packaged in two-kilogram bricks contained in several large trash bags.

On December 7, 1995, the three occupants were indicted by a federal grand jury on one count of conspiring to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and one count of possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). Castro and Gomez subsequently filed motions to suppress the cocaine as evidence based on the contention that Officer Nettles had violated their rights under the Fourth Amendment. A suppression hearing was held over the course of two days, in which the district court heard testimony from roughly a dozen witnesses. On March 15, 1996, the district court denied the motions to suppress in a lengthy and detailed memorandum order. Castro and Gomez then pleaded guilty to the two charges, reserving their right to appeal the district court's ruling on the suppression issue. Castro and Gomez were sentenced to 135 months of imprisonment for each count, to run concurrently, and a five year term of supervised release. Gomez and Castro ("appellants") each filed timely notices of appeal.

II.

The sole issue we must decide in this appeal is whether the

6

district court correctly found that Officer Nettles' conduct did not violate the Fourth Amendment.  In reviewing a district court's ruling on a motion to suppress, we review questions of law *de novo*, and accept the trial court's factual findings unless they are clearly erroneous.  ***United States v. Carrillo-Morales***, 27 F.3d 1054, 1060-61 (5th Cir. 1994), *cert. denied*, 513 U.S. 1178 (1995). We also view the relevant evidence in a light most favorable to the party that prevailed; in this case, the government.  ***United States v. Nichols***, 142 F.3d 857, 866 (5th Cir. 1998).

In this appeal the appellants contend that Officer Nettles exceeded the scope of his authority under the Fourth Amendment by arresting Castro and Vicencio for seat belt violations, and by later searching the Suburban at the sheriff's department.  The appellants rest that contention on three separate theories.  We review each in turn.

### A.

The appellants first argue that the arrests of Castro and Vicencio for seat belt violations were unlawful because Texas is a party to the Nonresident Violator Compact ("NVC"), Tex. Transp. Code Ann. § 703.002 (Vernon Pamph. 1998).  That compact, the appellants insist, requires a police officer to issue a nonresident motorist a citation in lieu of arrest on the motorist's promise to

appear.[5]  The appellants conclude that, because the arrests violated the NVC, the subsequently discovered cocaine is inadmissible as "fruit of the poisonous tree."  *See* **Segura v. United States**, 468 U.S. 796, 804 (1984) (observing that exclusionary rule reaches not only primary evidence obtained as direct result of illegal search or seizure, but also evidence later discovered and found to be derivative of illegality, or "fruit of the poisonous tree").  We note, as an initial matter, that our consideration of this issue is colored by the fact that the appellants never raised this issue below.  Accordingly, we review their argument under the plain error standard.

To prevail on a claim raised for the first time on appeal, an appellant must show (1) the existence of actual error; (2) that the error was plain; and (3) that it affects substantial rights. **United States v. Calverley**, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 1196 (1995).  When these elements are satisfied, a court has the discretion to correct forfeited errors if they "seriously affect the fairness, integrity, or public

---

[5]  The NVC provides in pertinent part:

> (a)  When issuing a citation for a traffic violation, a police officer shall issue the citation to a motorist who possesses a driver's license issued by a party jurisdiction and shall not . . . require the motorist to post collateral to secure appearance.

Tex. Transp. Code Ann. § 703.002 (Vernon Pamph. 1998).

8

reputation of judicial proceedings." *United States v. Calverley*, 37 F.3d 160, 164 (5th Cir. 1994) (*en banc*), *cert. denied*, 513 U.S. 1196 (1995). In *Calverley* we explained plain error in the following terms: "[p]lain is synonymous with 'clear' or 'obvious,' and '[a]t a minimum,' contemplates an error which was 'clear under current law' at the time of trial." *Id.* at 162-63 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). Applying this stringent standard to the facts of this case, we cannot conclude that plain error resulted from the district court's denial of the motions to suppress.

Though the NVC was adopted by the Texas legislature more than twenty years ago, there are no published decisions in the Texas courts, in the federal courts comprising the Fifth Circuit, or in the other state courts within this Circuit, construing the NVC as limiting the authority of a state police officer to make an arrest of a nonresident. The absence of clear law on the NVC existed at the time of the suppression hearing, and persists now as we decide this appeal.

In sharp contrast, from the time of the suppression hearing until present, Texas statutes have expressly allowed police officers to arrest a person for failure to wear a seat belt.[6]

---

[6] The Texas Transportation Code provides that "[a] peace officer may arrest without a warrant a person found committing a [traffic] violation." Tex. Transp. Code Ann. § 543.001 (Vernon Pamph. 1998). The Transportation Code allows for only two exceptions to the above rule: speeding and open container

9

Similarly, the Texas courts have recognized that motorists may be arrested for seat belt violations. *See* **Valencia v. State**, 820 S.W.2d 397, 399 (Tex. App.--Houston [14th Dist.] 1991, pet. ref'd) (holding that passenger of a van was subject to arrest for a seat belt offense); **Madison v. State**, 922 S.W.2d 610, 612 (Tex. App.--Texarkana 1996, pet. ref'd) (stating that a peace officer may arrest a driver for failure to wear a seat belt).

Thus, even if we assume for the sake of argument that error resulted with regard to the NVC, it would be impossible to conclude that any such error was plain at the time of the suppression hearing. We reject the appellants' claim that the arrests were unlawful in light of the NVC.

B.

The appellants next argue that Officer Nettles violated the Fourth Amendment because the actions he took after stopping the Suburban exceeded the scope of permissible governmental intrusion allowed under **Terry v. Ohio**, 392 U.S. 1 (1968). In particular, the appellants contend that by arresting Castro and Vicencio, and seizing the Suburban, Officer Nettles elevated what was otherwise

---

violations. Tex. Transp. Code Ann. § 543.004(a)(1) (Vernon Pamph. 1998) (stating that an officer shall issue a written notice to appear if the offense charged is speeding or a violation of the open container law). Therefore, a violation of the state seat belt law is not an offense which requires a citation; a motorist can be arrested for the violation. Tex. Transp. Code Ann. § 545.413 (Vernon Pamph. 1998).

an ordinary *Terry* stop into full-blown arrests that required probable cause.  That point is critical to the appellants' argument because in their view there was no probable cause supporting the arrests of Castro and Vicencio.[7]

It is well established that under the Fourth Amendment a warrantless arrest must be based on probable cause. *United States v. Shugart*, 117 F.3d 838, 846 (5th Cir.), *cert. denied*, 118 S. Ct. 433 (1997).  Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense.  *Id.* (quotations and citations omitted).  The presence of probable cause is a mixed question of fact and law. *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995), *cert. denied*, 117 S. Ct. 240 (1996).  We will not disturb the factual findings of the district court absent clear error, although the ultimate determination of whether there is probable cause for the arrest is a question of law we review *de novo*.  *Id.*

In the present case, the district court took testimony from nearly a dozen witnesses during a suppression hearing that lasted

---

[7]  A defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional. *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993).  In a case like the present, however, in which the officer acted without a warrant, the government bears the ultimate burden of proving that the officer had probable cause.  *Id*.

11

roughly two days. At that hearing Officer Nettles testified that Castro was not wearing his seat belt when the Suburban passed his patrol car which was stationed on the highway median. He also stated that he noticed that Vicencio was not wearing her seat belt while he was pacing the Suburban. Finally, Officer Nettles testified that he again observed that Castro and Vicencio were not wearing their seat belts when he approached the stopped Suburban. Although the appellants took the stand at the suppression hearing and contradicted Officer Nettles' testimony, the district court did not accept their version of events. In its written memorandum order the district court found that Officer Nettles' testimony was more credible, and found that Castro and Vicencio were in fact not wearing their seat belts.

Similarly, at the suppression hearing Officer Nettles testified that from the median he could see that the Suburban was traveling at a high rate of speed. He further stated that he paced the Suburban traveling 67 m.p.h. in a 55 m.p.h. zone, and watched the Suburban pass several vehicles. The appellants contested those findings by questioning the accuracy of the speedometer in Officer Nettles' patrol car, and by testifying that the speedometer in the Suburban never registered above the legal limit. Faced with this conflicting testimony, the district court chose to credit Officer Nettles' account. In its memorandum order the district court expressly found that the Suburban was in fact speeding.

To justify a reversal of the district court's factual

12

findings, the record would need to clearly demonstrate that those findings were in fact wrong.  But as the Supreme Court has observed, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."  *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1984).  Here, the district court observed the witnesses, weighed conflicting testimony, and made a determination that Officer Nettles' version of events was more credible.  On the record of this case we are not prepared to say that the district court's credibility determinations and ensuing factual findings were clearly erroneous.

Accordingly, as there is no reasonable basis for challenging the district court's findings that the Suburban was speeding, and that Castro and Vicencio were not wearing their seat belts, we conclude that Officer Nettles had reasonable suspicion to stop the Suburban, and probable cause to arrest Castro and Vicencio for violating the seat belt law.  We affirm the district court on this issue.

We likewise reject the appellants' vague claim that the impoundment and search of the Suburban exceeded the scope of permissible intrusion under the Fourth Amendment.  As we have concluded that the Suburban was lawfully stopped, and that Castro

13

and Vicencio were lawfully under arrest, the impoundment of the Suburban was permissible so long as it was carried out in furtherance of a community caretaking function. *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976); *United States v. Ponce*, 8 F.3d 989, 996 (5th Cir. 1993). The evidence supports the conclusion that the Suburban was impounded in accordance with Officer Nettles' community caretaking function. Following the impoundment, an inventory search was authorized, was interrupted only temporarily by the alert of a drug-sniffing dog on the vehicle, and inevitably would have led to the discovery of the drugs.

## C.

The appellants' final argument relates to the issue of pretext. Specifically, the appellants contend that their Fourth Amendment rights were violated because Officer Nettles' actions were motivated by his suspicion that the appellants were engaged in drug trafficking when there was no probable cause to that effect. Although conceding that under *United States v. Whren*, 517 U.S. 806 (1996), Officer Nettles' subjective beliefs have no bearing on the legality of the initial stop of the Suburban, the appellants insist that his motives transformed the subsequent impoundment into an unreasonable seizure under the Fourth Amendment. Notably, it was on this basis that the panel majority reversed the district court. *See Castro*, 129 F.2d at 758 ("We

14

perforce must conclude that taking possession of the Suburban for purposes of an inventory search was nothing more than a ruse to perform an unauthorized search"). We now reject that contention.

The thrust of the appellants' contention is that the impoundment was unreasonable based on the subjective motives of Officer Nettles. That argument, however, is intrinsically flawed. It is well settled that the reasonableness inquiry under the Fourth Amendment is an objective one, *Ohio v. Robinette*, 117 S. Ct. 417, 421 (1996), wholly divorced from the subjective beliefs of police officers. *United States v. Causey*, 834 F.2d 1179, 1184 (5th Cir. 1987). "[S]o long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry." *Id*. at 1184. Accordingly, we reject the appellants' contention that Officer Nettles' hidden motives invalidated what was an otherwise lawful impoundment carried out in accordance with the standard procedures of the Polk County Sheriff's Department.

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

15

POLITZ, Circuit Judge, dissenting:

I view the fourth amendment as an invaluable part of the constitutional framework of our American society. I am persuaded beyond peradventure that the pretextual arrest, vehicle impoundment, and search in the instant case are constitutionally offensive. The evidence gathered from the search of the vehicle should be suppressed for the facts as noted and the reasons set forth in the panel opinion, **United States v. Castro**, 129 F.3d 752 (5th Cir. 1997).

This case presents the unique situation of an admittedly pretextual stop and arrest, followed by a pretextual impoundment, to obtain a pretextual inventory search for drugs the agents suspected were in the vehicle. These agents, state and federal, admittedly did not have probable cause to make an arrest, and stood by as mere observers when the deputy made the stop and arrest for the failure to wear seat belts. While each of the actions could be upheld if some other lawful basis existed, as the majority is quick to note, there must be a point where the combination of pretext and continuing bad faith cannot be tolerated if the fourth amendment protections are to have any meaning whatsoever. In my opinion, the facts and circumstances of this case, viewed clearly and objectively, present just such a situation.

It is my perception that technical distortions and expansion of exclusionary rule exceptions threaten to make the fourth amendment a hollow shell of its former self. The treatment accorded by the majority opinion belies the very essence of the fourth amendment. Accordingly, I must dissent therefrom.

17

DENNIS, Circuit Judge, dissenting.

I respectfully dissent from the majority opinion.  I agree fully with the conclusions and sentiments of Judge Politz's dissenting opinion.  As he points out,  this is not a typical automobile inventory case but a "unique situation of an admittedly pretextual stop and arrest, followed by a pretextual impoundment, to obtain a pretextual inventory search for drugs"--"[a] combination of pretext and continuing bad faith [that] cannot be tolerated [under] the Fourth Amendment[]."  Indeed, the evidence demonstrates beyond any doubt that from the very beginning it was the investigatory motive of the Houston Police-DEA-FBI law enforcement unit to search defendants' vehicle for illegal drugs that instigated and orchestrated all of the federal, state and local law officers' actions towards the defendants.  Toward this investigatory end, the law enforcement officers in bad faith attempted to use a pretextual traffic offense arrest, a pretextual impoundment of the defendants' vehicle and a pretextual inventory of the vehicle as a ruse for a warrantless drug search.  Because a bad faith, pretextual automobile inventory does not create any exception to the warrant requirement, the planned inventory search in this case would have been unconstitutional had it been carried out. Therefore, the prophesied inventory can not serve as a "lawful

means" by which the drugs could have been discovered under the ultimate or inevitable discovery exception to the exclusionary rule. While I join in Judge Politz's dissenting opinion, I add this brief opinion to point out specifically how the Supreme Court's decisions clearly support our conclusions and indicate that the panel opinion was correct and should be reinstated and affirmed.

An ultimate or inevitable discovery exception to the exclusionary rule was recognized by the Supreme Court in Nix v. Williams, 467 U.S. 431 (1984). In that case, the evidence supported a finding that a search party ultimately or inevitably would have discovered the victim's body even had the defendant, whose statement directing police to the site was the result of a postarrest interrogation in violation of his right to counsel, not been questioned by the police. The Court succinctly defined the exception: "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means--here the volunteers' search--then the deterrence rationale has so little basis that the evidence should be received." Id. at 444 (emphasis added). Accordingly, in the present case the prosecution, in order to avail itself of the inevitable discovery exception, would have had to establish by a preponderance of the evidence that the drugs in the defendant's vehicle would have been ultimately or inevitably discovered by the lawful means of a lawful inventory had the police not conducted an

19

unconstitutional warrantless search in the absence of exigent circumstances.[8]

The inventory of the defendants' vehicle that the majority opinion hypothesizes that officer Nettles would have conducted (had the unlawful warrantless drug dog assisted search not occurred) would not have been a <u>lawful means</u> of discovery because it would have been a bad faith, pretextual inventory. It is true that the Supreme Court has "never held, outside the context of inventory search or administrative inspection..., that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment[.]" <u>Whren v. United States</u>, 517 U.S. 806, 812 (1996). But the Court has repeatedly indicated for discerning readers that improper ulterior motives will invalidate police conduct in the context of inventory searches. In <u>Whren</u>, <u>id.</u> at 811, the Court acknowledged that in <u>Florida v. Wells</u>, 495 U.S. 1, 4 (1990), it stated that "an inventory search must not be used as a ruse for a general rummaging in order to discover incriminating evidence"; that in <u>Colorado v. Bertine</u>, 479 U.S. 367, 372 (1987), in approving

---

[8]Because the officers did not have probable cause to search the defendants' vehicle for drugs at the time of the arrest, the fact that such probable cause arose after the vehicle was removed from the highway and impounded did not on its own, in the absence of demonstrated exigent circumstances, provide a constitutional basis for a search of the vehicle without a search warrant. *See* <u>Chambers v. Maroney</u>, 399 U.S. 42, 51 (1970) ("Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search." <u>Id.</u> at 51, *citing* <u>Carroll v. United States</u>, 267 U.S. 132, 153 (1925)). Accordingly, that theory cannot be used to support the judgment herein.

an inventory search, the Court thought it significant that there had been "no showing that the police, who were following standard procedures, acted in bad faith or for the sole purpose of investigation"; and that in New York v. Burger, 482 U.S. 691, 716-717, n. 27 (1987) the Court observed, in upholding the constitutionality of a warrantless administrative inspection, that the search did not appear to be "a 'pretext' for obtaining evidence of...violation of...penal laws."  Significantly, the Supreme Court in South Dakota v. Opperman, 428 U.S. 364, 376 (1976), setting forth the high court's first full articulation of the inventory exception, in approving an inventory after impoundment of a car left illegally parked for an extended period, expressed the following caveat:  "[T]here is no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive." (Footnotes omitted).

The evidence overwhelmingly demonstrates that everything the police did in the present case was a pretext or ruse that was meant to conceal the Houston-DEA-FBI unit's investigatory police motive and actions to search the defendants' vehicle for evidence of suspected illegal drug activity.  The district court either committed an error of law by assuming that the police officers' bad faith, pretextual motives and pretextual conduct cannot invalidate an inventory search under the Fourth Amendment or made clearly erroneous factual findings by ignoring the clear and convincing

proof of such ulterior motives and bad faith conduct.  Because the majority has repeated the same constitutional errors, I respectfully dissent.