IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 10, 2008

Charles R. Fulbruge III
Clerk

No. 07-10508

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

DALE ANDREW BESSOLO

Defendant-Appellant

Appeal from the  United States District Court
for the Northern District of Texas
USDC No. 2:06-CR-061-J

Before JONES, Chief Judge, and DAVIS, and GARZA, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Dale Andrew Bessolo ("Bessolo") pleaded guilty, pursuant to a plea agreement, to participating in a money laundering conspiracy and was sentenced to thirty-seven months in prison.  Prior to entering his guilty plea, Bessolo filed a motion to suppress evidence obtained following a traffic stop.  In his Report and Recommendation, the magistrate judge recommended that the motion be denied, and the district court adopted that recommendation.  In his plea agreement, Bessolo reserved the right to appeal the district court's

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

denial of his motion to suppress.    Bessolo timely appealed.    For the reasons below, we affirm the district court's order denying Bessolo's Motion to Suppress.

I.

On August 12, 2006 at approximately 11:27 a.m., Texas Department of Public Safety Trooper, Juan Medrano ("Medrano"), clocked Bessolo exceeding the posted speed limit by six miles-per-hour.    Medrano and Bessolo were traveling opposite directions on U.S. Highway 60.    Medrano testified that as he passed Bessolo, who was driving a U-Haul truck, Bessolo looked over at him and quickly looked back to the front, appearing startled.    Medrano then turned his car around and initiated a stop of the U-Haul truck for speeding.

Medrano approached the U-Haul on the driver's side, advised Bessolo that he was being stopped for speeding, and asked to see his driver's license, which Bessolo produced.    Medrano saw that Bessolo had a passenger with him in the U-Haul who was asleep.    Medrano asked Bessolo where he was headed, and Bessolo replied "El Paso."    Bessolo also offered Medrano the U-Haul rental agreement.    In response to Medrano's further questioning, Bessolo explained to Medrano that he was coming from Chicago and was helping a friend move. Medrano noted that before answering, Bessolo would repeat Medrano's questions.    Medrano then asked Bessolo to step out of the vehicle.

Medrano reviewed the U-Haul agreement, which indicated that Bessolo had rented the U-Haul in El Paso four days earlier.    When asked the name of the friend he was moving, Bessolo paused, looked down, and hesitantly replied, "Danny."    Bessolo stated that Danny was already in El Paso.    When questioned about where Danny lived in Chicago, Bessolo could not remember.    Medrano also asked Bessolo about his occupation, to which Bessolo replied that he is a truck driver.    When Medrano expressed his surprise that a truck driver would forego paying work for such a length of time, Bessolo first said he would be paid for the move; however, when pressed about how much, Bessolo stated that he thought

he would be paid. When asked about the passenger who was still in the U-Haul, Bessolo replied that she would be staying with him in El Paso for a few days. When Medrano questioned the passenger separately, she stated that she would be staying with him for a few months.

Medrano then returned to his patrol car and ran checks on Bessolo's driver's license and criminal history while Bessolo remained outside the U-Haul and in front of the patrol car. While the driver's license check came back as clear and current, Bessolo's criminal history revealed that he had prior arrests for possession of a controlled substance and possession of a hypodermic device. Medrano requested that a canine unit be sent to the scene, but upon being informed that none was available, he requested an additional trooper as backup. Medrano then completed the warning citation and printed it out. After printing the ticket, Medrano approached Bessolo and advised him he would only be receiving a warning for the speeding violation, and he presented Bessolo with the citation for his signature. Medrano testified that he also returned Bessolo's driver's license to him when he requested his signature on the citation.

Though Medrano's patrol car was equipped with video and audio equipment, it was not fully functional during this entire encounter. Although the video was fully functional, the audio had cut out due to a dead battery. When the citation and driver's license were given to Bessolo, the audio was not working, and both Bessolo and Medrano were out of view of the patrol car's camera.

Bessolo testified that Medrano never returned his driver's license. Medrano testified repeatedly that he did return the license to Bessolo. Bessolo further testified that Medrano did not return his U-Haul rental agreement. Medrano testified that he could not recall having taken possession of the rental

agreement, but that if he had, he would have returned it to Bessolo along with his driver's license and warning citation.[1]

Medrano testified that right after Bessolo signed the warning, he asked Bessolo for his consent to search the vehicle. Medrano testified that he requested and obtained consent to search from Bessolo. Bessolo, on the other hand, testified that Medrano never asked for his consent, rather, Medrano told him the vehicle was going to be searched. When Bessolo asked why Medrano wanted to search the vehicle, Medrano responded that Bessolo had a criminal history for drugs and drug paraphernalia, and he wanted to search for illegal items that might be inside the vehicle. Medrano also asked Bessolo if he had any weapons on him, and Bessolo handed him a small pocketknife.

Bessolo unlocked the lock on the back of the U-Haul, revealing old couches, an old dryer and refrigerator, some luggage, and a backpack. Upon the arrival of the backup police officer, Medrano commenced the search of the U-Haul and discovered $223,890.00 in cash inside the backpack. Bessolo was subsequently arrested. In a search of the cab of the U-Haul performed by the assisting officer after Bessolo's arrest, two crack pipes were discovered in the center console.

In determining that Bessolo's motion to suppress should be denied, the magistrate credited Medrano's testimony that he returned Bessolo's driver's license to him and that he asked for and received Bessolo's consent to search the U-Haul. The magistrate also concluded that because Medrano had asked for consent contemporaneously with giving Bessolo his license and the warning ticket, the traffic stop was not unlawfully extended. Finally, the magistrate also found that Bessolo's consent to the search was voluntary.

II.

---

[1] The video of the traffic stop shot from Medrano's patrol car shows Bessolo walking back toward the U-Haul while putting paperwork he received from Medrano into his back pocket. It is clear from the video that the rental agreement was not among the documents Bessolo received from Medrano.

In considering a ruling on a motion to suppress, the evidence is to be viewed in the light most favorable to the party prevailing in the district court, which in this case is the government.[2] Findings of fact are reviewed for clear error, and questions of law are reviewed de novo.[3]

> We will not reverse the district court's finding that consent was voluntary unless it is clearly erroneous. Where the judge bases a finding of consent on the oral testimony at a suppression hearing, the clearly erroneous standard is particularly strong since the judge had the opportunity to observe the demeanor of the witnesses.[4]

A magistrate judge's credibility determinations are owed deference when they are supported by the record.[5]

### III.

### A.

The first issue before this Court is whether the district court erred in adopting the magistrate judge's resolution of conflicts in the testimony regarding Bessolo's consent and whether he received his driver's license back from Medrano when he received his warning ticket. The magistrate judge found Medrano's testimony to be more credible than Bessolo's regarding Bessolo's consent and thus concluded that Medrano asked for Bessolo's consent to search the vehicle rather than telling Bessolo that he was going to search the vehicle. The magistrate judge also found Medrano's testimony to be more credible

---

[2] United States v. Dortch, 199 F.3d 193, 197 (5th Cir. 1999), modified on denial of reh'g, 203 F.3d 883 (2000); see also United States v. Castro, 166 F.3d 728, 731 (5th Cir.), cert. denied, 528 U.S. 827 (1999).

[3] United States v. Gonzales, 328 F.3d 755, 758 (5th Cir. 2003) (citing, inter alia, Ornelas v. United States, 517 U.S. 690, 699 (1996)); Dortch, 199 F.3d at 197; Castro, 166 F.3d at 731.

[4] Dortch, 199 F.3d at 201 (citing United States v. Shabazz, 993 F.2d 431, 438 (5th Cir. 1993)).

[5] United States v. Gibbs, 421 F.3d 352, 357 (5th Cir. 2005) (citing United States v. Giacomel, 153 F.3d 257, 258 (5th Cir. 1998)); Dortch, 199 F.3d at 201.

regarding whether Medrano had given Bessolo his driver's license back when he had Bessolo sign the warning ticket.

The magistrate judge, who heard the testimony of Medrano and Bessolo — the only evidence relevant to Bessolo's consent and whether the driver's license was returned — did not clearly err in crediting Medrano's testimony. It follows that the district court did not err in adopting the magistrate's determinations that Medrano asked for and received Bessolo's consent to search the vehicle and that Medrano returned Bessolo's driver's license to him.

B.

The second issue before this Court is whether the district court erred in adopting the magistrate judge's finding that the traffic stop was not impermissibly extended prior to Bessolo's consent to search the vehicle. The magistrate judge found that because Bessolo's consent was given contemporaneously with the completion of the traffic stop, there was no illegal detention of Bessolo, and the further encounter with Medrano was justified by Bessolo's consent.

"Detention may last no longer than required to effect the purpose of the stop."[6] Medrano's running of the computer checks on Bessolo and questioning about the purpose and itinerary of the trip were within the scope of the traffic stop.[7] Bessolo argues that his detention exceeded the purpose of the traffic stop because Medrano had no reasonable suspicion to search his vehicle. This argument is inapposite because the denial of the motion to suppress was not premised upon a finding that Medrano had reasonable suspicion; rather, the magistrate judge concluded that Bessolo voluntarily consented to the search contemporaneously with the conclusion of the traffic stop. Thus, any detention

---

[6] United States v. Jenson, 462 F.3d 399, 404 (5th Cir. 2006).

[7] See Id. at 403–04; United States v. Brigham, 382 F.3d 500, 508 (5th Cir. 2004).

thereafter was justified by the consent that was given, not by reasonable suspicion.

Bessolo also argues that because the video tape shows that he and Medrano were out of range of the camera, presumably to sign the ticket, for approximately three minutes, he was impermissibly detained because it could not possibly take three minutes to sign a warning citation. The magistrate judge concluded, though, that there was no evidence presented at the hearing indicating how long such administrative tasks take. Moreover, the magistrate judge credited Medrano's testimony that he asked for and received consent from Bessolo contemporaneously with the signing of the citation and that after asking for and receiving consent, Medrano and Bessolo talked about the reasons for the search and whether Bessolo had any weapons on his person.[8] Because of the deference owed the magistrate judge's credibility determinations and the lack of other contradictory evidence, we conclude that the district court did not clearly err in determining that there was no impermissible detention of Bessolo. Because the consent was obtained before further conversations between Medrano and Bessolo occurred, the encounter thereafter was consensual and not in violation of the Fourth Amendment.[9]

C.

The third issue before this Court is whether Bessolo's consent for Medrano to search the vehicle was voluntary. The district court adopted the magistrate judge's determination that it was.

To determine whether consent was voluntary, this Court considers: "(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive

---

[8] Because the consent was given simultaneously with the signing of the warning ticket, the holding in Jenson, 462 F.3d 399, 406 n.7 (5th Cir. 2006), that any detention, however brief, after the completion of the officer's computer check constitutes an illegal detention is inapplicable.

[9] See United States v. Sanchez-Pena, 336 F.3d 431, 441 (5th Cir. 2003).

7

police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found."[10] No single factor is dispositive.[11] The government bears the burden of proving that consent was voluntary.[12] The magistrate judge determined that: (1) Bessolo's custodial status was minimal and was no more onerous than the temporary detention any motorist suffers when stopped for an infraction; (2) no coercive police procedures were utilized; (3) Bessolo fully cooperated with Medrano; (4) Bessolo was not previously aware nor was he made aware of his right to refuse consent; (5) there is no indication that Bessolo's educational or intelligence level is diminished or impaired in any manner, though there is little information as to his educational level; and (6) there is no evidence that Bessolo thought Medrano would be looking for anything other than controlled substances (and so did not think incriminating evidence would be found). The magistrate judge further found that because these factors weighed in favor of a finding of voluntariness, and because Medrano had requested consent at the completion of the traffic stop, Bessolo's consent to the search was voluntary.

In addition to arguing that he did not give consent to the search, Bessolo also argues that consent was not voluntary because the request to search his vehicle was coercive. As determined above, Bessolo did consent. Therefore, the only unresolved issue before this Court is whether the magistrate judge erred in finding that the consent was voluntary.

---

[10] United States v. Jones, 234 F.3d 234, 242 (5th Cir. 2000) (citing United States v. Chavez-Villarreal, 3 F.3d 124, 127 (5th Cir. 1993)); see also Jenson, 462 F.3d at 406.

[11] Jones, 234 F.3d at 242.

[12] Id.

Bessolo argues first that coercive police procedures were used because Medrano never returned his rental agreement. The magistrate judge acknowledged that the government failed to show by a preponderance of the evidence that the rental agreement was returned but, despite this, concluded that Bessolo's consent was still valid. The magistrate judge supported this conclusion with the following reasons. First, when Bessolo testified that he did not feel free to leave once he signed the warning ticket, he stated it was because his driver's license had not been returned to him. He mentioned nothing about the rental agreement. Second, the magistrate judge explained that because the signing of the warning ticket and the requesting of consent were simultaneous, the consent was not given during an illegal detention. Thus, the magistrate judge was not required to determine whether the post-traffic stop was consensual and make a further determination as to whether the otherwise valid consent was rendered non-consensual.[13] Third, the magistrate judge found, under the totality of the circumstances,[14] that the retention of the rental agreement did not render an otherwise valid consent invalid. These conclusions by the magistrate judge are correct. However, Bessolo also argues that his consent was not valid because prong (2) of the Jones test was not met. He bases this argument on his contention that he had not received his U-Haul rental agreement when his consent was requested and obtained. Additionally, Bessolo argues that prong (6) of the Jones test was not met because there was no evidence to suggest that Bessolo believed incriminating evidence would not be found.

---

[13] See United States v. Miller, 146 F.3d 274, 279 (5th Cir. 1998) (differentiating between government's burden to satisfy the "normal standard for consensual searches that occur subsequent to legal stops" and its "heightened" burden following an illegal detention to establish an independent act of free will).

[14] See Dortch, 199 F.3d at 201 (citing Shabazz, 993 F.2d at 438).

As to prong (2), this Court has found searches to be involuntary where, among other circumstances, police retained control of a defendant's driver's license and rental papers at the time of consent.[15] We have previously noted that "[i]f the driver . . . receive[s] the license, registration, and any other material back that he needs to be on is way," then the encounter after a traffic stop becomes a consensual one.[16] Here, Bessolo received his driver's license and a warning citation from Medrano, and Medrano testified that Bessolo was then free to leave. Even though it is unclear whether the rental agreement was returned to Bessolo, Medrano testified that he knew of no law that requires the driver of a rental vehicle to maintain possession of the rental agreement. Bessolo did not testify that the reason he did not feel free to leave was due to the officer's retention of the rental agreement or because he thought it was illegal to drive the U-Haul without the agreement. Bessolo did not testify that he asked the officer for the rental agreement. No cases have been cited to us that hold a search to be coercive when the officer retains only a rental agreement.[17] Under the totality of the circumstances, we are satisfied that the magistrate judge correctly determined that Medrano's failure to return the rental agreement did not invalidate Bessolo's otherwise valid consent.

As to prong (6), "the defendant's belief that no incriminating evidence will be found,"[18] the magistrate found that there was

---

[15] See Jones, 234 F.3d at 243; Dortch, 199 F.3d at 202.

[16] Sanchez-Pena, 336 F.3d at 443 (citing United States v. Turner, 928 F.2d 956, 958 (10th Cir. 1991)).

[17] In a case factually similar to this one from the Fourth Circuit, when confronted with a circumstance where there was no evidence that a motorist's rental agreement had been returned to him yet his driver's license had been returned, and where there was reasonable suspicion for the initial traffic stop, that court, without pausing to consider whether retention of the rental agreement alone was coercive, held that consent to search that was subsequently given was voluntary. United States v. Brugal, 209 F.3d 353, 365 (4th Cir. 2000).

[18] Jones, 234 F.3d 242.

no evidence defendant thought the trooper would look inside the back pack or would be looking for any thing other than controlled substances . . . . [M]oreover, defendant would most likely have not been aware that incriminating evidence would have been found in that the trooper had advised the consent to search was being made as a result of defendant's prior arrest history for drug possession . . . .

In concluding that this prong weighed in favor of finding the consent was voluntary, the magistrate assumed that because Bessolo thought Medrano would be looking for drugs and not large sums of money, Bessolo thought no incriminating evidence would be found. Even if this assumption is erroneous and it is reasonable to believe that a search for controlled substances would include a search of personal items, such as a backpack, where the illegal money was found, under the totality of the circumstances, and considering that no Jones factor is dispositive, this fact is an insufficient basis for us to conclude that the magistrate judge erred in finding that Bessolo's consent was voluntary.

IV.

We conclude that the district court did not err in denying Bessolo's motion to suppress.

AFFIRMED.