# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 09-30863
Summary Calendar

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 13, 2010

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

LARRY W. LEDET, JR.,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:08-CR-68-1

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Larry W. Ledet, Jr., pleaded guilty to and was convicted of being a felon in possession of a firearm. He appeals the denial of his motion to suppress the firearm, which fell from his pants while being patted down after a *Terry*[1]-type stop. He argues that the arresting officer's detention implicated the Fourth Amendment and therefore his actions had to be justified at their inception by a reasonable suspicion that Ledet was engaged in criminal activity.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] *Terry v. Ohio,* 392 U.S. 1 (1968).

In reviewing a district court's ruling on a motion to suppress, this court reviews questions of law de novo and accepts the trial court's factual findings unless they are clearly erroneous. *United States v. Castro*, 166 F.3d 728, 731 (5th Cir. 1999) (en banc). The legality of police investigatory stops is tested in two parts. *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). First, the court "examine[s] whether the officer's action was justified at its inception," and then the court "inquire[s] whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Id.* (citing *Terry*, 392 U.S. at 19-20).

Pursuant to *Terry*, "[p]olice officers may briefly detain individuals on the street, even though there is no probable cause to arrest them, if they have a reasonable suspicion that criminal activity is afoot." *United States. v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc). "The Fourth Amendment requires only some minimum level of objective justification for the officers' actions—but more than a hunch—measured in light of the totality of the circumstances." *Id.*

"Reasonable suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion." *Id.* (citation omitted). The district court's determination of whether the facts provided reasonable suspicion is a conclusion of law reviewed de novo. *United States v. Scroggins*, 599 F.3d 433, 441(5th Cir. 2010). In evaluating the reasonableness of an officer's actions, "'due weight' must be given to the facts and inferences viewed 'in light of [the officer's] experience.'" *Michelletti*, 13 F.3d at 841 (quoting *Terry*, 392 U.S. at 27).

Further, the facts must be judged against an objective standard, such that the court asks "would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" *United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992) (en banc) (quoting *Terry*, 392 U.S. at 22) (internal quotation

marks omitted). Factors germane to a reasonable suspicion analysis include: whether the area where the stop occurred was a high crime area or one "of expected criminal activity," *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); whether the individual engaged in "unprovoked flight upon noticing the police," *id.*; and whether the individual looked nervous or made furtive gestures or suspicious movements. *United States v. Watson*, 953 F.2d 895, 897 (5th Cir. 1992).

The initial action in the instant case was Officer Richards's approaching Ledet's vehicle, shining a light inside of it, and asking Ledet to roll down his window. Contrary to Ledet's assertions, Officer Richards's testimony established that the area where Ledet was parked was known to be a high crime area, particularly with regard to burglary of vehicles. Further, the manner in which Ledet's car was parked was suspicious. The license plate was not visible, the car was parked in a dimly lit area, and, although the parking lights were on, no one could be seen in the car. These particular and articulable facts, taken together with rational inferences from those facts, reasonably warranted Officer Richards's "intrusion," i.e. the shining of the spotlight into the car and asking Ledet to roll down the window. *See Michelletti*, 13 F.3d at 840.

The court's inquiry asks whether Officer Richards's subsequent actions—ordering Ledet out of the car and patting him down–were reasonably related in scope to the circumstances that justified the stop. *See Brigham*, 382 F.3d at 506. "[T]he policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect." *Adams v. Williams*, 407 U.S. 143, 146 (1972). "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," he may conduct a limited protective search for concealed weapons. *Terry*, 392 U.S. at 24. "An officer need not be certain that an individual is armed; the issue is whether

a reasonably prudent man could believe, based on 'specific and articulable facts,' that his safety or that of others is in danger." *Michelletti*, 13 F.3d at 840-41.

Officer Richards testified that once he could see inside the car, it appeared to him that Ledet was concealing something. Therefore, Officer Richards's order that Ledet exit the car and his subsequent pat down were reasonably related in scope to the circumstances that justified the stop. The district court did not err when it denied Ledet's motion to suppress the firearm that dropped from his pants during that pat down.

AFFIRMED.