# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 7, 2010

No. 09-50719

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LUIS GOMEZ,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, and REAVLEY and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Appellant Luis Gomez ("Gomez") appeals the district court's denial of his motion to suppress evidence. Gomez asserts that police lacked reasonable suspicion to justify their decision to stop and search his vehicle, thereby tainting the evidence used to convict him. Under the particular facts of this case, we conclude that the district court did not err in finding that the responding officers were justified in stopping and searching Gomez's vehicle in keeping with the requirements of the Fourth Amendment. Thus, we AFFIRM the district court's denial of Gomez's motion to suppress and Gomez's subsequent conviction.

No. 09-50719

## I. FACTUAL BACKGROUND

On October 20, 2008, the Austin Police Department received a 911 call from a concerned citizen who, when asked his name, identified himself as "Mike." Mike informed the operator that he had seen an unidentified Hispanic man around twenty years of age and weighing 175 to 180 pounds brandishing a "black and gray" pistol and threatening individuals at a "little yellow gas station" on "the corner of Ceaser [sic] Chavez and Comal." Mike also told the operator that the man had entered a black Honda SUV, license plate T80PDW, with a white female driver and black male front-seat passenger. While Mike readily provided his name to the operator, he declined to wait for police to arrive at his location after telling the operator he was late for work. The 911 system revealed that Mike's telephone number was 512-542-9561 and that the call had originated from 1621 East Cesar Chavez Street, Austin, Texas. Sometime later, police discovered that the number and address captured by the 911 system led to a payphone.

The 911 dispatcher promptly forwarded the following information to patrol units in the area via text message:

| | |
|---|---|
| 10/20/2008 07:45:23 | blk honda suv lp t80pdw w/blk pistol |
| 10/20/2008 07:46:03 | driver wf, bm passenger side... hm 20 yoa |
| 10/20/2008 07:47:14 | 180 drk wearing....hm pulled out blk/gry pistol....will be major brand gas station |
| 10/20/2008 07:47:48 | call no longer at loc....just saw male w/pistol. |

Officers testified that they were told the name of the caller who reported the incident, his address, and his phone number. With respect to the phone number, the officers testified that most of the calls they respond to come from home or cellular phones, and they assumed they could follow up later as usual.

2

Moreover, the officers testified that they did not know the tip had been called in from a payphone at the time of the stop.

Only a few minutes later, while en route to the scene, one of the responding officers spotted the vehicle described in the 911 call heading in the opposite direction, turned around to follow it, and radioed in the license plate information to confirm he had the correct vehicle before conducting a felony stop with assistance from two other patrol cars. The officers removed the driver, a black male later identified as Timothy Mitchell, and the front passenger, a white female later identified as Heather Hall ("Hall"), from the car. Hall informed officers that there was a handgun in the back of the car that belonged to the male passenger in the backseat. At that point, Gomez was removed from the vehicle. As Gomez was removed, officers spotted a handgun protruding from underneath the back of the driver's seat in plain view. The officers seized the gun. While still detained at the scene, Gomez was identified as a convicted felon and arrested for illegally possessing a weapon. Gomez was subsequently charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Gomez moved to suppress all evidence obtained during the felony traffic stop. The district court conducted an evidentiary hearing in which the Government presented testimony from three police officers who responded to the 911 call. The Government also submitted: (1) an audio recording of the call; (2) a transcript of the call; (3) a video of the ensuing traffic stop recorded from one of the officers' cars; and (4) the Austin Police Department Incident Detail Report. Following the hearing, the district court denied Gomez's motion on the grounds that the factual information available to the officers at the time of the stop was sufficient to create reasonable suspicion justifying their actions. Gomez subsequently entered a conditional plea of guilty, expressly reserving the right

No. 09-50719

to appeal the district court's denial of his suppression motion. Gomez timely appealed.

## II. STANDARD OF REVIEW

In evaluating a district court's denial of a defendant's motion to suppress, we review factual findings, including credibility determinations, for clear error, and we review legal conclusions de novo. *United States v. Solis*, 299 F.3d 420, 435 (5th Cir. 2002). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001). "Where a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005). Finally, we review the evidence in the light most favorable to the Government as the prevailing party. *Id.*

## III. DISCUSSION

The only issue presented in this appeal is whether the district court erred when it concluded that the officers who searched Gomez's vehicle, thereby uncovering the firearm in his possession, had reasonable suspicion to conduct a felony stop. On the specific facts of this case, we conclude that the district court did not err in so holding.

Under *Terry v. Ohio*, 392 U.S. 1 (1968), "police officers may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). When, as here, the officers conducting the stop act without a warrant, the Government bears the burden of proving reasonable suspicion. *See United States v. Martinez*, 486 F.3d 855, 859-860 (5th Cir. 2007).

Whether a 911 call provides reasonable suspicion to justify a stop is determined on a case-by-case basis. *United States v. Vickers*, 540 F.3d 356, 361

No. 09-50719

(5th Cir.), *cert. denied*, 129 S. Ct. 771 (2008).   The factors that must be considered in deciding whether a tip provides a sufficient basis for a traffic stop include: (1) the credibility and reliability of the informant; (2) the specificity of the information contained in the tip or report; (3) the extent to which the information in the tip or report can be verified by officers in the field; and (4) whether the tip or report concerns active or recent activity or has instead gone stale.   *Martinez*, 486 F.3d at 861.   If a tip is provided by an anonymous informant, such that the informant's credibility and reliability cannot be determined, the Government must establish reasonable suspicion based on the remaining factors.   *Id.* at 862.   An anonymous informant's ability to describe a person's appearance and location is insufficient without more to create a reasonable suspicion of criminal activity.   *Id.* at 863.   This court has observed, however, that "where instant caller identification allows the police to trace the identity of an anonymous telephone informant, the ready ability to identify the caller increases the reliability of such tips." *United States v. Casper*, 536 F.3d 409, 415 (5th Cir. 2008), *vacated on other grounds*, 129 S. Ct. 2156 (2009). Whether an officer has reasonable suspicion must be based upon the facts known to the officer at the time.   *Vickers*, 540 F.3d at 361.

As the district court found below, Mike's emergency 911 call to police readily satisfies three of the four factors set forth in *Martinez*. Mike provided an extraordinary amount of detail in his call—a description of open criminal activity including the coloring of the weapon involved; the location of that activity, details about the suspect's race, age, and weight; the make, model, and license plate number of the suspect's vehicle; and the race and gender of other passengers in the vehicle.   Officers were subsequently able to verify a number of these claims including all of the vehicle information, the race and gender of the other passengers, and, to an extent, the location, as the car was stopped headed away from the gas station only a few short minutes after Mike's 911 call.

5

No. 09-50719

Finally, the record reflects that police spotted the car and conducted the stop very shortly after receiving Mike's tip, thus satisfying *Martinez*'s fourth factor.

Hence, the only major dispute in this case revolves around whether the "anonymous" nature of Mike's call to 911 precluded the district court from holding that the officers had a reasonable suspicion sufficient to justify the stop. First, Gomez's contention that Mike's call was "anonymous" is doubtful under the circumstances of this case. When asked his name, Mike readily offered it to the 911 operator. Moreover, the officers conducting the stop had no reason to believe they were acting on an anonymous tip. *See Florida v. J.L.*, 529 U.S. 266, 271 (2000) ("The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search."). Rather, they had been given a name, phone number, and address of the concerned citizen who had called in the complaint. One officer testified that most of the 911 calls received by the department came from home or cellular phones, and he stated further that he fully expected to be able to verify the allegations of criminal conduct after he had completed the stop. Thus, the officers appear to have quite reasonably believed they were acting on a credible and reliable tip from a verifiable source—a fact further buttressed by the presumption of reliability this court attaches to citizen reports to police. *See United States v. Burbridge*, 252 F.3d 775, 778-79 (5th Cir. 2001).[1]

Even assuming Mike was an "anonymous tipster," however, the officers still had reasonable suspicion in light of the remaining factors set forth in

---

[1] Gomez contends *Burbridge* is distinguishable because the reporting citizen in that case directly confirmed that officers had apprehended the right individual as officers conducted a stop based on the citizen's tip. 252 F.3d at 777. In the instant case, however, Mike's tip was just as reasonably credible to the officers at the time they acted as the citizen's tip was in *Burbridge.* They believed they had Mike's phone number and his address in addition to his first name—thus they were confident in their ability to contact Mike for confirmation of his tip. Consequently, the heightened credibility of citizen reports still attached to Mike's tip at the time officers stopped Gomez's vehicle.

No. 09-50719

*Martinez*. Gomez argues that the Supreme Court decision in *Florida v. J.L.*, 529 U.S. 266 (2000), controls the instant case and provides a per se rule prohibiting *Terry* stops based on anonymous tips that fail to provide predictive information. *J.L.* announced no such rule and was decided on very different facts. In *J.L.*, an anonymous informant contacted police to report that a young black male wearing a plaid shirt at a bus stop possessed a concealed weapon. 529 U.S. at 268. Importantly, the informant "neither explained how he knew about the gun nor supplied any basis for believing he had inside information about [the suspect]." *Id*. at 271. The Court specifically noted that, as a result, the tipster in that case was not reliable because correctly identifying a suspect "does not show that the tipster has knowledge of concealed criminal activity." *Id*. at 272.[2] Based on these facts, the Court concluded that police lacked reasonable suspicion because the informant's failure to state why he knew about the concealed gun meant the tip was not "reliable in its assertion of illegality." *Id*.

Here, Mike was not reporting a concealed weapon. Even the limited information transmitted to police by the 911 dispatcher conveyed that Mike had seen someone pull out a pistol in public at a nearby gas station. In fact, one of the officers testified that he viewed the situation as potentially exigent given that the facts provided by Mike could be construed as describing anything from showing off a new gun to a carjacking. To adopt Gomez's view of *J.L.* would be to require officers to investigate citizens availing themselves of the important service provided by 911 dispatchers before intervening to apprehend individuals suspected of committing open criminal acts in the community. *J.L.* does not mandate such a perverse outcome. Consequently, even if Mike was an

---

[2] The same factual disparity distinguishes this court's decisions in *United States v. Martinez*, 486 F.3d 855, 858-59 (5th Cir. 2007) (anonymous report that suspect was concealing weapons used in recent crime) and *United States v. Roch*, 5 F.3d 894, 899 (5th Cir. 1993) ("[T]he government sought to raise a reasonable suspicion . . . that Roch was a felon and possessed a gun.").

No. 09-50719

"anonymous tipster," the remaining *Martinez* factors could and did validate the officers' reasonable suspicion justifying the stop of Gomez's vehicle.

## IV. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's denial of Gomez's motion to suppress and Gomez's subsequent conviction.