**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 18, 2012

Lyle W. Cayce
Clerk

No. 11-20163

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

ALEXANDER FRANK MCKINNON,

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Texas,
Houston Division
4:10-CR-00367

Before BENAVIDES, STEWART, and GRAVES, Circuit Judges.

PER CURIAM:[*]

In February 2010, Houston Police Officer Salam Zia ("Zia") stopped a vehicle driven by Alexander Frank McKinnon ("McKinnon"), a felon, for an expired registration sticker. After McKinnon failed to produce a driver's license upon request, Zia placed him under arrest. Based on the Houston Police Department's ("HPD") towing policy, Zia ordered the vehicle to be towed and conducted an inventory search of the vehicle. During the inventory search, Zia

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

discovered a loaded revolver under the driver's side seat. Thereafter, McKinnon was indicted for being a felon in possession of a firearm and ammunition, in violation of 8 U.S.C. §§ 922(g)(1) and 924 (a)(2).

Prior to trial, McKinnon moved to suppress the revolver and certain pre-*Miranda* statements. At the conclusion of the suppression hearing, the district court suppressed McKinnon's pre-*Miranda* statements, but found that the revolver and ammunition were admissible. Based on the district court's findings, McKinnon pleaded guilty to being a felon in possession of a firearm and ammunition, but reserved his right to appeal the district court's denial of his motion to suppress with respect to the firearm and ammunition. The district court subsequently sentenced McKinnon to thirty months imprisonment. McKinnon now appeals.

## FACTS AND PROCEDURAL BACKGROUND

On the morning of February 24, 2010, Zia was patrolling a Houston, Texas neighborhood where a series of burglaries had taken place. At approximately 8:45 a.m., Zia drove past a vehicle traveling in the opposite direction whose registration sticker appeared to have been expired. The vehicle was occupied by three male subjects: McKinnon, the driver; Oramand Higgins ("Higgins"), the front-seat passenger; and Matthew Momoh ("Momoh"), the backseat passenger. Zia then made a U-turn and followed the vehicle for a few blocks before initiating a traffic stop.

As Zia approached the driver's side of the vehicle he asked McKinnon to roll down his window. Instead, McKinnon opened the driver's side door and explained that the window did not work. As McKinnon was explaining that his window did not work, Zia observed that McKinnon's hands were shaking and that he was stuttering. Zia then asked McKinnon for his driver's license or operator's license. McKinnon responded that he did not have either, but informed Zia that his name was "Alex McKinney." Zia then returned to his

patrol car and entered "Alex McKinney" into his computer. When Zia's query failed to generate any search results for "Alex McKinney," Zia ran a search of the license plate number. This query revealed that the vehicle was not registered to "Alex McKinney." This led Zia to believe that McKinnon was providing false information. Based on this information, Zia decided that he was going to arrest McKinnon for failing to provide a Texas driver's license upon demand, a Class C misdemeanor. Pursuant to HPD's towing policy, Zia decided to have the vehicle operated by McKinnon towed as a "nonconsent tow."[1]

Prior to McKinnon's arrest, HPD Officer John Terry ("Terry") arrived on the scene. Zia gave Terry a brief description of what had occurred and asked Terry to assist him by watching Higgins and Momoh while he conducted an inventory search. Terry then approached the passenger side of the vehicle and asked Higgins and Momoh to exit the vehicle and stand on the sidewalk.

Once McKinnon was arrested and placed in Zia's patrol car, Zia began his inventory search of the vehicle. Zia began to inventory search near the driver's seat where he discovered a loaded revolver wedged between the driver's seat and the seat adjustment controls. After taking possession of the revolver, Zia walked back to his patrol car and asked McKinnon, "Were you going to shoot me with it?" McKinnon responded in the negative, and told Zia that he had the gun for protection. By this time, the tow truck had arrived on the scene and was in

---

[1] A "nonconsent tow" is defined as,

[a]ny tow of a motor vehicle from a police scene by a contract auto wrecker operator as authorized by a peace officer. This includes tows in which the vehicle owner is unwilling or unable to designate a tow operator to remove the vehicle, and an officer determines that no other authorized person is present and able to remove the vehicle. This also includes, but is not limited to, instances in which the vehicle is abandoned, stolen, being operated by a person who is the subject of a custodial arrest, or otherwise subject to towing under police authority.

HOUS. POLICE DEP'T GEN. ORDER NO. 600-10 (issue date July 29, 2008).

position to tow the vehicle. After Zia completed his inventory search, the tow-truck driver removed the vehicle from the scene.

On June 9, 2010, McKinnon was indicted on one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Subsequently, McKinnon filed his motion to suppress the revolver and ammunition and any pre-*Miranda* statements he may have made.[2]

On November 17, 2010, the district court held a suppression hearing. During this hearing, Zia and Terry recounted their version of the incident. Specifically, Zia testified,

> the reason why I decided to the write the report for not having an operator's license was because I believed that he was providing me with false information, and at that point I thought there could have been some other – you know, maybe, possibly, some evidence in the vehicle. So, I arrested him and, subsequent to that, inventoried the vehicle.

In response to a question regarding his suspicion that there may have been evidence in the vehicle, Zia testified, "I suspected that there was more to the story." Although Zia stated that he did not have enough facts to form the opinion that McKinnon, Higgins, and Momoh were "casing" houses to burglarize, Zia testified that he did suspect such after running a computer search of Higgins and Momoh, which revealed that Higgins had a history of burglary. In fact, Zia stated, "Could they have been casing houses? Sure, they could have, but I didn't put that in the report."

Based on the testimony, McKinnon argued that Zia's inventory search violated his Fourth Amendment rights because (1) the inventory search was merely a pretext for searching for evidence related to the burglaries that had recently taken place in the neighborhood where McKinnon was stopped; and (2)

---

[2] Because McKinnon does not challenge the district court's findings with respect to his pre-*Miranda* statements, we will not discuss them below.

the inventory search was conducted pursuant to a policy that provided HPD officers with impermissible discretion in deciding when to tow a vehicle. The district court, unpersuaded by McKinnon's argument, denied his motion to suppress the revolver and ammunition.

McKinnon pleaded guilty to one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). Pursuant to his plea agreement, however, McKinnon reserved the right to appeal the district court's denial of his motion to suppress. The district court sentenced McKinnon to thirty months imprisonment. He appealed.

## STANDARD OF REVIEW

When reviewing a district court's denial of a defendant's motion to suppress, we accept as true the district court's factual findings unless clearly erroneous and we consider all questions of law de novo. *United States v. Gomez*, 623 F.3d 265, 268 (5th Cir. 2010). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *Id.* (internal quotation marks and citation omitted). The evidence and inferences therefrom are reviewed in the light most favorable to the Government as the prevailing party. *Id.* Because we are asked to consider a warrantless search and seizure, the government bears the burden of proving, by a preponderance of the evidence, that the search and seizure were constitutional." *United States v. Guerrero-Barajas*, 249 F.3d 428, 432 (5th Cir. 2001).

## DISCUSSION

On appeal, McKinnon challenges the district court's denial of his motion to suppress the firearm and ammunition discovered during an inventory search of the vehicle he was driving. Specifically, McKinnon argues that the HPD's towing policy affords officers unconstitutional discretion in deciding when to tow a vehicle as a nonconsent tow. McKinnon further claims that Zia's inventory search of the vehicle was unconstitutional because it was a purposeful and

general means of discovering evidence, in violation of the Fourth Amendment. In sum, McKinnon maintains that Zia had complete discretion in deciding whether to tow, leave the vehicle parked, or permit another to leave with it. Those options, he argues, afforded Zia unconstitutional discretion in deciding whether to inventory.[3]

*A. The Impound*

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "Warrantless searches and seizures are 'per se unreasonable unless they fall within a few narrowly defined exceptions." *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002). One such exception that courts have recognized is the "community caretaking" exception. *See United States v. Castro*, 166 F.3d 728, 734 (5th Cir. 1999) (en banc); *United States v. Smith*, 522 F.3d 305, 315 (3d Cir. 2008); *United States v. Proctor*, 489 F.3d 1348, 1353 (D.C. Cir. 2007); *United States v. Coccia*, 446 F.3d 233, 239 (1st Cir. 2006); *United States v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004).

The origin of the community caretaking exception is found in the United States Supreme Court's decision in *South Dakota v. Opperman*, 428 U.S. 364 (1976). In *Opperman*, the Court noted that impoundments by the police may be in furtherance of "public safety" or "community caretaking functions," such as removing "disabled or damaged vehicles," and "automobiles which violate parking ordinances, and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic." *Id.* at 368 (internal citation omitted). The Court further noted that the "authority of police to seize and remove from

---

[3] It should be noted that "the decision to impound is properly analyzed as distinct from the decision to inventory." *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996) (citing *Cardwell v. Lewis*, 417 U.S. 583, 593 (1974)).

the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *Id.* at 369.

Approximately ten years after *Opperman*, the Court again touched on the subject of a police officer's decision to impound a vehicle in *Colorado v. Bertine*, 479 U.S. 367 (1987). Interpreting *Opperman*, the Court stated:

> [n]othing in *Opperman* [ ] prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity. Here, the discretion afforded the Boulder police was exercised in light of standardized criteria, related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it.

*Bertine*, 479 U.S. at 375.

Since *Opperman* and *Bertine*, we have focused our inquiry on the reasonableness of the vehicle impoundment for a community caretaking purpose without reference to any standardized criteria. *See Castro*, 166 F.3d at 734 (impoundment of vehicle "permissible so long as it was carried out in furtherance of a community caretaking function."); *United States v. Ponce*, 8 F.3d 989, 996 (5th Cir. 1994) (applying community caretaking exception without reference to standard criteria); *United States v. Staller*, 616 F.2d 1284, 1289-90 (5th Cir. 1980) (recognizing and applying community caretaking exception). In considering whether this exception applies, our constitutional analysis hinges upon the reasonableness of the "community caretaker" impound viewed in the context of the facts and circumstances encountered by the officer. *See Cooper v. California*, 386 U.S. 58, 59 (1987) ("whether a search or seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case.").

The Government contends that the decision to impound was reasonable under the Fourth Amendment because: (1) it reduced Zia's exposure to liability for lost or stolen items; (2) leaving the vehicle locked and parked presented a

risk of theft or vandalism; and (3) the vehicle could not lawfully be driven away from the scene. Because nothing in *Opperman* suggests that limiting an officer's liability is in any way related to purposes of the community caretaking exception, this consideration is irrelevant. We have recognized, however, that an appreciable risk of theft or vandalism may support an officer's decision to impound a vehicle. *See Ponce*, 8 F.3d at 996; *Staller*, 616 F.2d at 1289-90.

In this case, Zia's decision to impound the car was reasonable under the Fourth Amendment. It is undisputed that the neighborhood in which the stop occurred had experienced a series of burglaries. Although these were house burglaries, there is nothing to suggest that the vehicle would not have been stolen or vandalized if left parked and locked at the scene. By impounding the vehicle, Zia ensured that the vehicle was not left on a public street where it could have become a nuisance, and where it could have been stolen or damaged. Thus, Zia's conduct falls within the community caretaking function.

McKinnon further contends that Zia should have released the vehicle to Momoh because he had a valid driver's license. Nevertheless, when viewed in the light most favorable to the Government, the evidence does not compel such a conclusion. Although Momoh possessed a valid driver's license there is no evidence that he had valid insurance coverage for the vehicle that would allow Momoh to legally drive the vehicle from the scene. In addition, the vehicle's registration sticker was expired. Pursuant to Texas Transportation Code § 502.472, "a person commits an offense if the person operates a motor vehicle that has not been registered . . . ." Thus, the vehicle operated by McKinnon could not lawfully be driven away from the scene.

Furthermore, it is undisputed that the vehicle was registered to Brandy Toler ("Toler").[4] According to the HPD towing policy, a nonconsent tow "includes

---

[4] The record is devoid of any information regarding who Brandy Toler is other than that she is the owner of the vehicle that McKinnon was driving on the morning of the stop.

tows in which the vehicle owner is unwilling or unable to designate a tow operator to remove the vehicle, and the officer determines that no other authorized person is present an able to remove the vehicle." HOUS. POLICE DEP'T GEN. ORDER NO. 600-10 (issue date July 29, 2008). It is clear that Toler, the vehicle owner, was not present to designate a tow operator. And, even assuming that Toler entrusted her vehicle to McKinnon, there is nothing in the record to suggest that Toler also entrusted her vehicle to Momoh, Higgins, or anyone else for that matter. Therefore, viewing the evidence in the light most favorable to the Government, Zia's decision to impound the vehicle was reasonable under the Fourth Amendment.

*B. The Inventory*

According to McKinnon's second point of contention, he argues that Zia's inventory search of the vehicle was unconstitutional under the Fourth Amendment because it was a purposeful and general means of discovering evidence. Indeed, "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). "In order to prevent inventory searches from concealing such unguided rummaging, [the] Supreme Court has dictated that a single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." *United States v. Lage*, 183 F.3d 374, 380 (5th Cir. 1999) (quoting *United States v. Walker*, 931 F.2d 1066, 1068 (5th Cir.1991) (internal quotation marks omitted)).

"Thus, an inventory search of a seized vehicle is reasonable and not violative of the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger." *Lage*, 183

F.3d at 380 (citing *United States v. Hope*, 102 F.2d 114, 116 (5th Cir. 1996)). These standardized regulations and procedures must "sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches." *United States v. Andrews*, 22 F.3d 1328, 1336 (5th Cir. 1994) (citation omitted).

> Pursuant to the HPD towing policy,
>
> Whenever an officer authorizes a nonconsent tow of a prisoner's vehicle, the officer will personally conduct an inventory of items in the vehicle including any and all containers not secured by a lock, and will complete a wrecker slip. A detailed inventory list will be written on the wrecker slip. Officers must be specific in identifying inventoried items. General terms such as "miscellaneous property" will not be used.

HOUS. POLICE DEP'T GEN. ORDER NO. 600-10 (issue date July 29, 2008).

McKinnon does not contend that Zia did not follow this policy. We are therefore faced with considering only the adequacy of the policy itself. Relying upon the three considerations set forth in *Lage*, *supra.*, we conclude that the policy is constitutionally adequate. By its clear terms, the policy is consistent with preserving the property of the vehicle's owner, ensuring that the police protect themselves against claims or disputes over lost or stolen property, and protecting the police from danger. Moreover, its limitation on the types of containers that can be searched helps prevent an inventory search from becoming an evidentiary search. Though a slight constraint on the exercise of an officer's discretion, a limitation on the types of containers that can be searched during an inventory search deprives officers of the "uncanalized discretion" that the Supreme Court has found constitutionally deficient. *See Wells*, 495 U.S. at 4. Because the inventory search in this case was conducted pursuant to this constitutionally adequate policy, it was reasonable and thus does not violate the Fourth Amendment. *Lage*, 183 F.3d at 380. The district court, therefore, did not err in denying McKinnon's motion to suppress.

In this case, McKinnon fails to develop any persuasive reasons for reversing the district court's judgment. He does, however, raise one issue that warrants brief mention. McKinnon argues that Zia's subjective motivation in conducting the search renders the inventory search invalid under the Fourth Amendment. In light of well-established case law:

> the reasonableness inquiry under the Fourth Amendment is an objective one, wholly divorced from the subjective beliefs of police officers. [S]o long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry.

*Castro*, 166 F.3d at 734 (internal citations and quotation marks omitted). *See also Whren v. United States*, 517 U.S. 806, 813 (1996) (reading its precedent as "foreclos[ing] any argument that the constitutional reasonableness of traffic stops depend on the actual motivations of the individual officers involved"); *United States v. Causey*, 834 F.2d 1179, 1184 (5th Cir. 1987) (en banc) ("[S]o long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry."). Although Zia may have had an ulterior motive to search the vehicle, the inventory search was reasonable, and thus, remained valid under the Fourth Amendment.

## CONCLUSION

For these reasons, the district court's denial of McKinnon's motion to suppress is AFFIRMED. Thus, McKinnon's motion for bond pending appeal or, in the alternative for expedited appeal is DENIED.