## IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 11, 2012

No. 11-40944

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

DANIEL BUSTAMANTE,

Defendant–Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:11-CR-243-1

Before KING, PRADO, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant–Appellant Daniel Bustamante entered a conditional guilty plea
to attempting to export a firearm from the United States to Mexico. He reserved
his right to appeal the district court's order denying his motion to suppress the
firearm found in his truck. Bustamante alleges that the police violated the
Fourth Amendment by stopping his truck without reasonable suspicion. We
determine that the police had reasonable suspicion to stop Bustamante's truck,
and therefore affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-40944

## I. FACTUAL AND PROCEDURAL BACKGROUND

Around 3:00 PM on January 18, 2011, the Laredo Police Department ("LPD") Communications Division received a tip from a male telephone caller who refused to identify himself. The tipster stated that a bald, heavy-set man with tattoos on his arms was planning to transport assault rifles to "Los Zetas"[1] in Mexico in a blue pickup truck with license plate number AW7-8923. The truck would cross into Mexico via a ranch located off Pico Road. The tipster further stated that the truck was currently located at the intersection of San Eduardo Avenue and Garza Street. Although the tipster refused to identify himself, his cell phone number was collected by the Communications Division.

LPD Officer Roberto Garcia heard the tip broadcast over the radio from his office. He called dispatch to confirm the license plate number, and also received from dispatch the tipster's cell phone number. The license plate check revealed that the blue truck was registered to Bustamante; a criminal check on Bustamante revealed that he had previously been identified as a member of the Mexican Mafia prison gang and had been stopped once while driving the same blue truck. Garcia called the tipster, who repeated the tip. He then transmitted the results of the licence plate and criminal checks to the LPD officers who were looking for the truck near the areas identified by the tipster. Another LPD officer reported over the radio that he knew that the Bustamante family owned a ranch off Pico Road. The LPD officers could not locate the truck. Garcia called the tipster a second time, was told by the tipster that the truck had moved to San Dario Street, and Garcia himself traveled to that location. Still, he could not locate the truck. He called the tipster a third time; it was now about 4:00 PM. During this call, the tipster stated that he personally knew Bustamante and another individual, Javi, who involved in the weapons transport, and that he

---

[1] Los Zetas are a Mexican drug cartel. *The Reach of Mexico's Drug Cartels*, N.Y. Times, Sept. 11, 2011, http://www.nytimes.com/interactive/2009/03/22/us/BORDER.html.

was present when the weapons were loaded into the truck; he further stated that he would try to find the truck, which had been relocated until darkness fell, and would call Garcia with an update.

Garcia went home around 5:00 PM, when his shift ended. About 6:00 PM, he received a call from the tipster. In this phone call, the tipster stated that the truck was parked next to a red truck in front of Javi's house on Benavidez Street near the intersection with San Eduardo Avenue and Bustamante was waiting until darkness to bring the weapons to the ranch off Pico Road. Garcia called one of his supervisors to inform him of the tipster's information and to see if a plain-clothes officer could be sent to that location. He then relayed the information over the radio to dispatch and LPD units near Benavidez/San Eduardo. A plain clothes officer confirmed that the blue truck was parked next to a red truck at the location given by the tipster. LPD Lieutenant Montemayor advised over the radio not to approach the truck or the residence. A BOLO ("be on the lookout") report for the blue truck was broadcast over the radio; the BOLO included Bustamante's name, the license plate number, that the truck was transporting weapons, and that it was headed for Pico Road.

LPD Officer Victor Barroso, whose normal patrol district included Pico Road, heard the BOLO over the radio and parked his police car just south of Pico Road to watch for Bustamante's truck. Because the BOLO advised that there were likely weapons in the truck and that the driver of the truck was a member of the Mexican Mafia, Barroso intended—if he saw the truck—to make a "felony stop."[2] About 7:00 PM, a few minutes after parking his car, Barroso saw the blue truck. He pulled behind the truck, confirmed the license plate number over the radio, and requested backup. "Seconds later," a police car driven by LPD Officer Gerardo Jalomo arrived and Barroso initiated the stop. Bustamante

_____

[2] A felony stop preserves officer safety by requiring a backup patrol car to be on the scene before the stop is initiated; further, the officers approach the car with weapons drawn.

No. 11-40944

immediately pulled over the truck.  Barroso approached the driver's side of the truck with his 12-gauge shotgun drawn and instructed Bustamante not to move. Montemayor had arrived at the scene by this time and removed Bustamante from his truck, handcuffed him, and placed him in Jalomo's car.  Barroso looked in the back of the truck and found a green rifle case on the backseat, containing two assault rifles.  Bustamante was then placed under arrest.

Bustamante moved to suppress the evidence found in the truck, arguing that Barroso pulled over the truck without reasonable suspicion in violation of the Fourth Amendment.  Garcia, Barroso, Jalomo, and an ATF agent testified at the suppression hearing.  In a written order, the district court denied Bustamante's motion.  Bustamante entered a conditional guilty plea, reserving the right to appeal the district court's denial of his motion to suppress; he timely appealed.

## II.  JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291.  "When the district court denies a motion to suppress, we review factual findings for clear error and conclusions of law de novo."  *United States v. Gray*, 669 F.3d 556, 562 (5th Cir. 2012) (internal quotation marks omitted).  We view the evidence in the light most favorable to the prevailing party.  *Id.*  "Whether specific facts give rise to reasonable suspicion is a question of law that we review de novo."  *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379 (5th Cir. 2010).

## III.  DISCUSSION

### A.  Reasonable Suspicion Standard

"An investigative vehicle stop is permissible under *Terry* [*v. Ohio*, 392 U.S. 1 (1968),] only when the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot."  *United States v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007) (internal quotation marks omitted).  The

No. 11-40944

Government bears the burden of proving reasonable suspicion. *United States v. Gomez*, 623 F.3d 265, 269 (5th Cir. 2010). Whether an informant's tip provides reasonable suspicion depends on various factors: (1) the credibility and reliability of the informant; (2) the specificity of the information contained in the tip or report; (3) the extent to which the information in the tip or report can be verified by officers in the field; and (4) whether the tip or report concerns active or recent activity, or has instead gone stale. *Martinez*, 486 F.3d at 861 (internal quotation marks omitted).

The Supreme Court has evinced a strong distrust of anonymous tips because the police cannot assess the tipster's reputation, nor can the police hold anonymous tipsters responsible if their allegations turn out to be fabricated. *Id.* at 862 (citing *Florida v. J.L.*, 529 U.S. 266 (2000)). Nonetheless, "'there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" *Id.* at 863 (quoting *Alabama v. White*, 496 U.S. 325, 327 (1990)); *see also Gomez*, 623 F.3d at 269 ("If a tip is provided by an anonymous informant, such that the informant's credibility and reliability cannot be determined, the Government must establish reasonable suspicion based on the remaining factors."). We have stated before that "where instant caller identification allows the police to trace the identity of an anonymous telephone informant, the ready ability to identify the caller increases the reliability of such tips." *Gomez*, 623 F.3d at 269 (internal quotation marks omitted). Under the "collective-knowledge doctrine" the officer initiating the investigatory stop need not have personal knowledge of the facts which gave rise to a reasonable suspicion, provided the initiating officer acted in reliance upon information from other officers with such personal knowledge. *See United States v. Ibarra-Sanchez*, 199 F.3d 753, 759–60 (5th Cir. 1999).

No. 11-40944

## B. Barroso had Reasonable Suspicion

Barroso had reasonable suspicion because the tipster provided specific, timely, and predictive information that was verified by officers in the field. Although the tipster here was anonymous—in that he refused to give his name—his credibility and reliability were enhanced by the LPD's collection of his phone number and the tipster's subsequent phone calls with Garcia, *see Gomez*, 623 F.3d at 269, as well as the tipster's explanation that he knew about the weapons because he personally knew Bustamante and was present when the weapons were loaded into the truck, *see J.L.*, 529 U.S. at 271. To be sure, the tipster twice gave Garcia information about the truck's location that could not be verified, but the tipster ultimately updated Garcia on the correct location of the truck. In addition to the truck's location, the tipster also provided other specifics about the truck, such as its color, license plate number, and driver. Many of these specifics were verified by officers in the field while the truck was parked on Benavidez Street. Moreover, the tipster correctly predicted that the truck would depart Benavidez Street in the direction of Pico Road not long after nightfall. We therefore agree with the district court that the tip provided the sort of specific, timely, predictive, and up-to-date information that gives rise to reasonable suspicion. *See Martinez*, 486 F.3d at 861. Finally, we reject Bustamante's argument that Barroso himself needed to have personal knowledge of the facts that gave rise to reasonable suspicion; it was sufficient that Barroso stopped Bustamante's truck in reliance on the BOLO which was itself supported by Garcia's reasonable suspicion. *See Ibarra-Sanchez*, 199 F.3d at 759.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's order denying Bustamante's motion to suppress.

AFFIRMED.

6