AMBRO, Circuit Judge,
concurring in part and concurring in the judgment.
I concur in the judgment because I agree with my colleagues and the District Court that the evidence discovered in Matthews’s bag was admissible under the inevitable discovery doctrine. Maj. Op. at 224-25; see also United States v. Mendez, 315 F.3d 132 (2d Cir.2002). I also agree that the inventory procedure established in Philadelphia Police Department Memorandum 99-14 (“Policy 99-14”) is a “heads I win, tails you lose” arrangement that will always result in Matthews’s bag being searched. Nonetheless, I write separately to express my concern that the warrant exception my colleagues craft, if it had been precedential, would allow law enforcement officers to skirt the requirement that inventory searches be conducted in line with standardized criteria or an established routine. See Florida v. Wells, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990).
To satisfy constitutional requirements, inventory searches must be administrative, not investigatory, in nature. We allow police officers to catalogue the items in an arrestee’s possession when he is taken into custody to promote a number of governmental interests. Colorado v. Bertine, 479 U.S. 367, 372, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). “[Ijnventory procedures serve to protect an owner’s property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.” Id. We do not permit them so that law enforcement can further its investigatory objectives under the guise of producing an inventory of impounded items. Wells, 495 U.S. at 4, 110 S.Ct. 1632.
Policy 99-14 is presumably designed to guard against police officers conducting inventories with investigatory intent by allowing them to perform a warrantless inventory only when they do not believe the luggage contains contraband. As my colleagues aptly explain, this procedure could be accused of elevating form over substance. Matthews’s backpack was going to be searched; the only question was the path the arresting officers were required to take to do so. If they thought there was probable cause to believe his backpack contained contraband, the policy directed them to obtain a search warrant. If they thought probable cause did not exist, or the magistrate denied their warrant application on the ground that there was no probable cause, the policy directed them to conduct an inventory search.
*227 Though my colleagues and I agree that Officer Pomeroy did not follow this policy when she searched Matthews’s backpack, we disagree as to the importance of requiring law enforcement agencies to follow standardized procedures when conducting non-investigatory searches. As the majority sees it, “when a valid arrest has been made in a public place, which requires that the arrestee be transported from the scene, police may search any luggage that the arrestee has in his possession at the time of the arrest, and which must accompany the arrestee to the station, prior to transporting it.”[1] Maj. Op. at 224. By creating this new exception, they authorize police to conduct inventory searches that do not follow standardized procedure or routine. This is both contrary to precedent and, in my view, a slippery slope. It also makes irrelevant the other established exceptions — search-incident-to-arrest, see, e.g., United States v. Shakir, 616 F.3d 315, 321 (3d Cir.2010), and exigent circumstances, see, e.g., United States v. Kreimes, 649 F.2d 1185, 1190-91 (5th Cir.1981)— that may justify a warrantless search of the luggage of an arrestee in custody.
My colleagues suggest that they are not authorizing an inventory search, but a search pursuant to the transportation of an arrestee. I see little difference between the two “types” of searches. Both are administrative, not investigatory, in nature. And both are intended, in part, to secure officer safety. I neither doubt the importance of this objective nor disagree that an arrestee’s privacy must at times give way to it. My disagreement is with whether we should require police to follow established criteria when conducting these sorts of administrative searches. If police leadership thinks safety concerns justify the need to search an arrestee’s bags prior to his transportation to the stationhouse, requiring it to implement an established procedure to regulate those searches is a minimal burden that I see no reason to discard.[2]
The Supreme Court has held that “reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment.” Bertine, 479 U.S. at 374, 107 S.Ct. 738; see also Illinois v. Lafayette, 462 U.S. 640, 648, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). It has always “adhered to the requirement,” however, “that inventories be conducted according to standardized criteria.” Bertine, 479 U.S. at 375 n. 6, 107 S.Ct. 738. This requirement “tend[s] to ensure that the intrusion w[ill] be limited in scope to the extent necessary to carry out the care-taking function.” South Dakota v. Opperman, 428 U.S. 364, 375, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). And it does not become “a ruse for a general rummaging in order to discover incriminating evidence.” *228 Wells, 495 U.S. at 4, 110 S.Ct. 1632. Indeed, in Maryland v. King, — U.S. —, 133 S.Ct. 1958, 186 L.Ed.2d 1 (2013), a case relied on heavily by the majority for the proposition that an arrestee’s privacy interests are outweighed by the need to protect officer safety, the administrative DNA search the Supreme Court upheld as constitutional was conducted in accordance with detailed procedural requirements established by the Maryland DNA Collection Act. Id. at 1967, 1979-80; see also id. at 1983-86 (Scalia, J., dissenting) (based in part on the view that the DNA-collection procedures revealed that the searches had an investigatory, not an administrative, intent).
We have previously addressed the role of standardized procedures when vehicles are impounded and searched by police. United States v. Mundy, 621 F.3d 283 (3d Cir.2010); United States v. Salmon, 944 F.2d 1106 (3d Cir.1991). Following the Supreme Court’s ruling that inventory procedures may lawfully provide officers with discretion in conducting the search “so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity,” Bertine, 479 U.S. at 375, 107 S.Ct. 738, we have permitted inventories conducted pursuant to criteria that limit officer discretion in two ways. “First, it must limit the officer’s discretion regarding whether to search a seized vehicle. Second, the pre-existing criteria or routine must limit an officer’s discretion regarding the scope of an inventory search, particularly with respect to the treatment of closed containers.” Salmon, 944 F.2d at 1120 (emphases in original). “These limitations,” as we have explained, make certain “that officers performing these caretaking functions are ‘not allowed so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of a crime.’ ” Mundy, 621 F.3d at 288 (quoting Wells, 495 U.S. at 4, 110 S.Ct. 1632).
The need to circumscribe officer discretion is equally applicable in the context of luggage searches. See Lafayette, 462 U.S. at 648, 103 S.Ct. 2605 (“[W]e hold that it is not ‘unreasonable’ for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures.”). When they seize a bag “‘in circumstances that suggest a probability of discovering criminal evidence, the officers will inevitably be motivated in part by criminal investigative objectives.’ ” Mundy, 621 F.3d at 294 (quoting United States v. Lopez, 547 F.3d 364, 372 (2d Cir.2008)). The use of standardized procedures helps to prevent these investigatory objectives from driving the occurrence and nature of the search.
Though my colleagues wisely limit their holding to the search of luggage impounded when an arrestee is taken into custody, there may be no principled way to prevent this exception from creeping into other contexts. “It remains a ‘cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.’ ” California v. Acevedo, 500 U.S. 565, 580, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (quoting Mincey v. Arizona, 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)) (emphasis in original). By creating a new exception, we run the risk of inverting this presumption.
Admittedly, Policy 99-14 is so broad that it can result in officers universally searching the luggage of arrestees taken into custody, the same result that may be produced by my colleagues’ new exception to obtaining a warrant. But this does not *229 mean that insisting on the use of standardized procedures is purposeless. Conducting such searches per predetermined criteria ensures that officers are uniformly searching luggage in this manner and not singling out some arrestees on the basis of an investigatory suspicion that falls short of probable cause. In addition, though we do not pass on the permissibility of the Policy 99-14, there may be instances where we determine that police regulations are unreasonable in light of the administrative interests these searches are intended to serve.
For these reasons, I do not endorse my colleagues’ rule that officers transporting an arrestee from a public arrest site may conduct a warrantless search of any luggage in the arrestee’s possession without following standardized procedures.

. The majority’s careful caveat that the luggage must need to be accompanied to the station in order to justify the search invites the “next case” question of what happens if someone is arrested with another person who is not arrested (say the arrestee’s mother or girlfriend). No probable cause exists to seek a warrant to search the arrestee’s bag, and the accompanying person is willing to take the bag. There is no probable cause, no safety concern, and no need for an inventory at the station. If the non-arrested person is not permitted to take the luggage, is not any search of it solely for investigatory purposes?

. The majority notes that it "need not decide if an 'inventory search’ conducted outside of the stationhouse comports with the Fourth Amendment, even if governed by standardized procedures.” Maj. Op. at 221 n. 6. Other Courts of Appeals have approved inventory searches conducted at the site of arrest, as opposed to at the stationhouse, provided they are performed according to established criteria. See, e.g., United States v. McKinnon, 681 F.3d 203, 206 (5th Cir.2012), cert. denied, — U.S. —, 133 S.Ct. 980, 184 L.Ed.2d 764 (2013).