# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 21, 2022

Lyle W. Cayce
Clerk

No. 21-20385

United States of America,

*Plaintiff—Appellee*,

*versus*

Jesse Walker,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CR-222-1

Before King, Elrod, and Southwick, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

Jesse Walker pled guilty to one count of being a felon in possession of a firearm. His plea reserved the right to appeal the district court's denial of his motion to suppress. He challenges the district court's determinations that a firearm and cell phone discovered in his car, as well as statements he made to officers, were admissible. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 30, 2020, Officers Donovan Polk and Rolando Foster were patrolling a high-crime area in Houston, Texas. They saw a Nissan Altima

hesitantly pulling out of a parking lot that was known for narcotics activity. The officers ran the Nissan's license plates. Associated with that license were municipal warrants for traffic violations by Jesse Walker. Their search also identified Walker as a gang member and felon.

The officers had been following the Nissan while searching for information about the vehicle. They sped up because the Nissan was travelling at a high rate of speed. The officers saw the Nissan "[]cross all three lanes and turn[] on the outside lane of traffic," and begin "driving erratically" and "at a high rate of speed." The Nissan then "sudden[ly]" turned into a Texaco parking lot.

At this point, the officers made a traffic stop. Both officers approached the vehicle. Polk testified he had already decided to arrest Walker based on his outstanding traffic warrants. Foster approached the driver's side of Walker's vehicle, stated Walker was travelling at a high rate of speed, and asked him to produce a driver's license. Walker responded that it was "in his pocket" but then began looking in his car for the license.

Foster, unable to see Walker's hands when he supposedly was searching for his driver's license, became concerned. The officer asked Walker to get out of the car so that the officers could "detain" him and explained they were doing so to get Walker's ID for him. Polk told Walker that he was not under arrest. After Walker got out of the vehicle, Foster handcuffed him.

Foster then searched Walker. He removed Walker's wallet and looked for a driver's license but did not find one. Meanwhile, Polk searched Walker's vehicle. Before beginning the search, Polk asked Walker if "there is anything [he] should know about" in the vehicle. Walker eventually stated there is "something you might take me to jail for if I tell you," and then told Polk about a pistol in the console.

No. 21-20385

After discovering the firearm, the officers moved Walker to their patrol car and called Homeland Security Special Agent Kayada Ereme. Agent Ereme arrived, read Walker his *Miranda* rights, and questioned him about the firearm. Following Agent Ereme's questioning, the officers gave Walker an opportunity to call his girlfriend to pick up his car if she could get there within approximately 10 minutes. Walker's girlfriend arrived at least 30 minutes later after the vehicle was already attached to the tow truck. One officer estimated it was an hour before she arrived, while a video that recorded many events at the scene revealed it was closer to a 30-minute delay. We did not discover testimony or video recording of any conversation by the officers with Walker's girlfriend after she appeared. We do know, though, that Walker's vehicle was towed instead of being released to his girlfriend.

On May 26, 2020, Walker was indicted on one count of being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). He moved to suppress the evidence gathered at the time of the traffic stop, including the statements he made to Foster, Polk, and Ereme; the firearm; and the contents of his cell phone that were seized during the traffic stop and later searched by Ereme based on a search warrant.

The district court denied Walker's motion to suppress. Walker pled guilty to the charge of being a felon in possession of a firearm. He was sentenced to 21 months imprisonment and three years of supervised release. His plea agreement reserved his right to appeal the district court's denial of his motion to suppress. Walker timely appealed.

## DISCUSSION

"In evaluating a district court's denial of a defendant's motion to suppress, we review factual findings, including credibility determinations, for clear error, and we review legal conclusions *de novo*." *United States v. Gomez*, 623 F.3d 265, 268 (5th Cir. 2010). A factual finding is considered clearly

erroneous if, after we review the entire record, we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Hernandez*, 279 F.3d 302, 306 (5th Cir. 2002) (quotation marks and citations omitted). We review the evidence in the light most favorable to the Government as the prevailing party in this case. *See United States v. Garcia*, 604 F.3d 186, 189–90 (5th Cir. 2010). "We uphold a district court's denial of a suppression motion if there is any reasonable view of the evidence to support it." *United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018) (quotation marks and citations omitted).

Walker argues the evidence and statements arising from his traffic stop should have been suppressed for two reasons: (1) his arrest and stop were unjustified, and thus any evidence and statements arising from the stop or arrest should be excluded as fruits of the poisonous tree; and (2) his statements to Polk and Foster were part of an improper interrogation and must be excluded.

We start with the legality of the traffic stop. The Fourth Amendment requires a traffic stop to be justified when it begins; any subsequent actions must be "reasonably related in scope to the circumstances that justified the stop." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (citing *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968)). A traffic stop is justified at its inception when an officer has "an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (citation omitted). "[R]easonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Id.* Reasonable suspicion is a low threshold; it is not probable cause. *See United States v. Castillo*, 804 F.3d 361, 364, 367 (5th Cir. 2015). Certainly, then, if officers "have probable cause to believe that a

No. 21-20385

traffic violation has occurred, then there is also reasonable suspicion to stop the vehicle. *Whren v. United States*, 517 U.S. 806, 810 (1996).

The officers stated that Walker committed two traffic violations — making an illegal U-turn and erratic driving. Walker responds by emphasizing that the bodycam video recorded Officer Foster stating the turn "wasn't an illegal U-turn." At the suppression hearing, Foster explained his statement by saying "those words did come out of my mouth," but that was because he thought the overall violation was erratic driving, not an illegal U-turn. The district court had an opportunity to evaluate this testimony at the suppression hearing and found the officers' testimony regarding observed traffic violations credible.

Walker has no evidence that leaves us "with the definite and firm conviction that a mistake has been made" in the district court's credibility determination. *See United States v. Garza*, 118 F.3d 278, 283 (5th Cir. 1997). Thus, we cannot say the district court committed clear error when finding that the officers observed a traffic violation.

Having witnessed two traffic violations, the officers had reasonable suspicion sufficient to justify making a traffic stop. There was no error when the district court concluded that the evidence should not have been suppressed on this basis. *See Whren*, 517 U.S. at 810.

Walker also contends that the City of Houston traffic warrants on which the officers relied as the basis of their arrest and subsequent search were devoid of probable cause. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Although the Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands," courts have established an exclusionary rule to safeguard the Amendment's

protections that, "when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139–40 (2009) (quotation marks and citations omitted).

"The good faith exception provides that 'evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant' typically should not be excluded." *Contreras*, 905 F.3d 853 at 857 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). This exception also applies to arrest warrants. *See Arizona v. Evans*, 514 U.S. 1, 15–16 (1995). If a warrant is used in good faith, then it is not necessary to determine whether the warrant was supported with probable cause. *United States v. Blevins*, 755 F.3d 312, 324 (5th Cir. 2014).

One circumstance in which the good faith exception applies is when police officers rely on warrants that are later invalidated because of an administrative error. *Herring*, 555 U.S. at 137. In *Herring*, an officer discovered methamphetamine and an illegal firearm when arresting a defendant based on a warrant that had been recalled long before the arrest, which a recordkeeping error had left in the relevant database. *Id.* at 137–38. The good faith exception applied because the mistake that invalidated the warrant did not evince conduct that was "so objectively culpable as to require exclusion." *Id.* at 146. The Court explained, "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* at 144.

Similarly, the good faith exception applied when a police officer discovered marijuana during an arrest based on an invalid misdemeanor warrant that had appeared to be valid on his patrol-car computer due to the court clerk's administrative error. *Evans*, 514 U.S. at 4, 14. The Court emphasized that the court clerk, not the officer, was responsible for the invalidating mistake. *Id.* at 15. "If it were indeed a court clerk who was

responsible for the erroneous entry on the police computer, application of the exclusionary rule [ ] could not be expected to alter the behavior of the arresting officer"; thus, exclusion would be of no deterrent value. *Id.* at 15–16. The good faith exception applied both because it was the court employee's error and because there was "no indication that the arresting officer was not acting objectively reasonably" in relying on the record. *Id.*

Here, the officers relied on their computer records that listed Walker's warrants. They did not have the complaints underlying the warrants or other information that might have revealed possible invalidity. Like the *Evans* officer, Foster and Polk were only aware that warrants existed in Walker's name. *See Evans*, 514 U.S. at 4. Indeed, Walker's counsel stated in his argument at the suppression hearing and in his brief on appeal that even if the City of Houston might be aware that the warrants are deficient, the police officers themselves are not. Without "deliberate, reckless, or grossly negligent" conduct on the part of the police, excluding evidence has little, if any, deterrent value and is therefore unjustified. *See Herring*, 555 U.S. at 143–44; *Evans*, 514 U.S. at 15.

Walker argues that even if the police officers did not engage in deliberate or negligent conduct to invalidate the warrant, the good faith exception should not apply based on the reason for the errors. Specifically, he alleges the City of Houston has adopted an unconstitutional policy that allows fill-in-the-blank form complaints devoid of probable cause to serve as the basis for arrest warrants. He contends the City of Houston issued tens of thousands of deficient warrants just in 2020. The Supreme Court has left the door open for such arguments, he claims, by concluding that when "police have been shown to be reckless in maintaining a warrant system, or to have knowingly made false entries to lay the groundwork for future false arrests, exclusion would certainly be justified." *Herring*, 555 U.S. at 146. The Court acknowledged that if "systemic errors were demonstrated, it might be

No. 21-20385

reckless for officers to rely on an unreliable warrant system." *Id.* The Court found no evidence in *Herring* of such systemic errors. *Id.* at 147.

Walker argues that part of the egregiousness of the City of Houston's allegedly unconstitutional system is that the City is "keeping police officers in the dark about the invalidity of the Houston municipal court warrants." A warrant system that produces routine or widespread errors raises serious constitutional questions. *See Herring*, 555 U.S. at 146–47. Here, there is no evidence in the record that the City of Houston's warrant system regularly, *i.e.*, systemically, produces such errors.

In sum, there is nothing in the record that would show that Foster's and Polk's reliance on the computer records was not objectively reasonable. The district court did not err in applying the good faith exception, and the officers were justified in their reliance on the traffic warrants as a basis for arrest. *See id.* at 147.

Having determined that Walker's traffic stop and arrest were both justified, we consider whether there was any impropriety in the discovery of the firearm and cell phone during the traffic stop. Walker argues that even if his arrest were based on probable cause and his traffic stop justified, the evidence discovered should be excluded because Walker's statements to the officers informing them of the gun's location were made before *Miranda* warnings were given.

*Miranda* requires an officer to advise suspects of various rights before proceeding with custodial interrogation. *Edwards v. Arizona*, 451 U.S. 477, 481–82 (1981). A custodial interrogation occurs when "a reasonable person in the position of the suspect would understand the situation to constitute a restraint on freedom of movement to the degree that the law associates with formal arrest." *Murray v. Earle*, 405 F.3d 278, 286 (5th Cir. 2005) (quotation marks and citations omitted).

8

We set aside the issue of whether Walker was in custody when he answered questions and instead focus on whether it was inevitable that the officers would have discovered the firearm and cell phone. The inevitable-discovery doctrine is a limit on the Fourth Amendment's exclusionary rule. It provides that "otherwise suppressible evidence [will be admitted] if that evidence would inevitably have been discovered by lawful means." *United States v. Jackson*, 596 F.3d 236, 241 (5th Cir. 2010). It applies if "the Government demonstrates by a preponderance of the evidence that (1) there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct and (2) that the Government was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation." *Id.*

Here, the officers were required to conduct an inventory search of Walker's vehicle once he was arrested. As we indicated above, the arrest was valid. Once the vehicle was properly seized, an inventory search is valid "if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger." *United States v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2012) (quotation marks and citations omitted). Such policies are not violative of the Fourth Amendment so long as they "sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches." *United States v. Andrews*, 22 F.3d 1328, 1336 (5th Cir. 1994).

The inventory policy for the Houston Police Department ("HPD") is set out in General Order 600-10. That order states under its "Vehicle Inventory" subsection: "Whenever an officer authorizes a nonconsent tow of a prisoner's vehicle, the officer shall personally conduct an inventory of items in the vehicle including any and all containers not secured by a lock and

No. 21-20385

shall complete a wrecker slip." That policy is supplemented with definitions, including that a nonconsent tow is "[a] tow of a motor vehicle that is an incident management tow or a private property tow"; an incident management tow is "[a]ny tow of a vehicle in which the wrecker is summoned to the scene of a traffic accident or an incident, including removal of a vehicle"; and an incident is "an unplanned randomly occurring traffic event that adversely affects normal traffic operations."

Further, the General Order states:

Prisoners are responsible for the disposition of their vehicles unless such vehicles are subject to a nonconsent tow. . . . In all other instances, an officer shall release a prisoner's vehicle to a passenger or a third party if all of the following apply:

a. The vehicle is mechanically safe and not stolen or evidence in a crime, and there is proof of financial responsibility for the vehicle.

b. The prisoner wishes to release the vehicle to a passenger or third party that is at the scene, not under arrest, in possession of a valid driver license, and not intoxicated.

This policy provides proper limitations on the inventory search. Some of the limits prevent a search of locked compartments and only require an inventory search when a nonconsent tow is authorized. Those limits prevent the inventory search from being transformed into an evidentiary search. We conclude that these rules are constitutional. *See McKinnon*, 681 F.3d at 210. Indeed, *McKinnon* determined a previous iteration of the same HPD "Vehicle Inventory" policy with identical language, save replacements of "shall" with "will" and "must," was constitutionally valid. *Id.* (holding HPD General Order 600-10, issued July 29, 2008, was constitutionally adequate).

No. 21-20385

We now examine whether the application of the policy was appropriate. Walker's vehicle was illegally parked in front of a gas pump. After Walker was justifiably arrested, the vehicle had to be removed. Already, this subjects Walker's vehicle to a nonconsent tow and to an inventory search because the need to remove the car constitutes an "incident management tow."

Still, the officers gave Walker an opportunity to release the vehicle to his girlfriend. She did not arrive, though, until at least 30 minutes after being called. By then, Walker's car was already hooked up to the tow truck. HPD's policy did not require the officers to release Walker's car to a third party in the first place and still did not require them to do so at the end of the traffic stop if no third party was at the scene. Thus, Walker's car was subject to an inventory search, meaning both the firearm and cell phone would have been inevitably discovered. The firearm and cell phone were properly seized.

We close by acknowledging that Walker also argues that the statements he made during Polk and Foster's questioning should have been suppressed because he was subjected to custodial interrogation without first being given his *Miranda* warnings. The only significant statement, though, was his answer to being asked if "there is anything [the officer] should know about" in the vehicle. Walker responded that there is "something you might take me to jail for if I tell you," and he then told Polk about a pistol in the console. We just held that the discovery of the firearm was inevitable. The statement is not independently significant. We reject any prejudicial error from the admission of the statement.

The district court did not err in denying Walker's motion to suppress.

AFFIRMED.

11